No. 2017-1798, -1799, -1800

_____

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

### SUMITOMO DAINIPPON PHARMA CO., LTD., SUNOVION PHARMACEUTICALS, INC,

*Plaintiffs-Appellees,*

v.

### EMCURE PHARMACEUTICALS LIMITED, HERITAGE PHARMA LABS INC., fka Emcure Pharmaceuticals USA Inc., INVAGEN PHARMACEUTICALS, INC., TEVA PHARMACEUTICALS USA, INC., TEVA PHARMACEUTICAL INDUSTRIES, LTD.,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court for the District of New Jersey
Judge Stanley R. Chesler.
2:15-cv-00280-SRC-CLW, 2:15-00281-SRC-CLW, 2:15-cv-06401-SRC-CLW

_____

## APPELLANTS' REPLY BRIEF

_____

Ira J. Levy
Cynthia Lambert Hardman
Brian Prew
Linnea P. Cipriano
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY  10018
(212) 813-8800

William M. Jay

David C. Kistler
BLANK ROME LLP
301 Carnegie Center, 3rd Floor
Princeton, New Jersey 08540
(609) 750-7700

Jay P. Lessler
Christopher K. Hu
BLANK ROME LLP
The Chrysler Building

GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC  20001
(202) 346-4000


David J. Zimmer
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
(617) 570-1192


*Counsel for Defendants-Appellants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd.*



Robert S. Silver
Salvatore Guerriero
Pei-Ru Wey
CAESAR RIVISE, PC
1635 Market Street
12th Floor – Seven Penn Center
Philadelphia, PA 19103
(215) 567-2010

*Counsel for Defendant-Appellant InvaGen Pharmaceuticals, Inc.*

July 24, 2017

405 Lexington Avenue
New York, New York 10174-0208
(212) 885-5000

*Counsel for Defendants-Appellants Emcure Pharmaceuticals, Ltd. and Heritage Pharma Labs Inc. (formerly known as Emcure Pharmaceuticals USA, Inc.)*

**CERTIFICATE OF INTEREST FOR APPELLANTS TEVA PHARMACEUTICALS USA, INC. AND TEVA PHARMACEUTICAL INDUSTRIES LTD.**

Counsel for Appellants Teva Pharmaceuticals USA Inc. and Teva Pharmaceutical Industries, Ltd., certifies the following:

**1.     The full name of every party or amicus represented by me is:**

Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd.

**2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A

**3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Teva Pharmaceuticals USA, Inc.:  Teva Pharmaceuticals Holdings Coöperatieve U.A.; IVAX LLC; Orvet UK; Teva Pharmaceuticals Europe B.V.; and Teva Pharmaceutical Industries Ltd. ("Teva Ltd."), which is the only publicly traded company that owns 10% or more of Teva Pharmaceuticals USA, Inc.

Teva Ltd.:  Teva Ltd. has no parent company, and no publicly held company owns 10 percent or more of the stock of Teva Ltd.

**4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:**

<u>Goodwin Procter LLP</u>:  Jonathan A. Auerbach (no longer with firm)

<u>Patunas Law LLC</u>:  Michael E. Patunas (formerly at Lite DePalma Greenberg LLC)

July 24, 2017

/s/ *Ira J. Levy*

*Counsel for Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd.*

# CERTIFICATE OF INTEREST FOR APPELLANT INVAGEN PHARMACEUTICALS, INC.

Counsel for Appellant InvaGen Pharmaceuticals, Inc. certifies the following:

1. The full name of every party or amicus curiae represented by me is:

> InvaGen Pharmaceuticals, Inc.

2. The names of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

> N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

> InvaGen Pharmaceuticals, Inc. is a wholly-owned subsidiary of Cipla Ltd., which is a public limited company traded on the National Stock Exchange of India and Bombay Stock Exchange.

4. The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

> <u>Caesar Rivise, PC</u>: Robert S. Silver, Salvatore Guerriero, and Pei-Ru Wey.

Dated: July 24, 2017                    Respectfully submitted,

*/s/ Robert S. Silver*
Robert S. Silver
Caesar Rivise, PC
7 Penn Center
1635 Market Street, 12th Floor
Philadelphia, PA 19103
(215)-567-2010
*Counsel for Defendant- Appellant InvaGen Pharmaceuticals, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Sumitomo Daninippon Pharma Co., Ltd. et al.          **v.**          Emcure Pharmaceuticals Limited et al.

Case No.          17-1798, -1799, -1800

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☒ (appellant) ☐ (respondent) ☐ (appellee)☐ (amicus)☐ (name of party)

Emcure Pharmaceuticals Limited, Heritage Pharma Labs Inc., fka Emcure Pharmaceuticals USA, Inc.

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Emcure Pharmaceuticals Limited | | N/A |
| Heritage Pharma Labs Inc., fka Emcure Pharmaceuticals USA Inc. | | Emcure Pharmaceuticals Limited |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Blank Rome LLP:  Jay P. Lessler, Christopher K. Hu and David C. Kistler

July 24, 2017                                    /s/ Jay P. Lessler

Date                                                   Signature of counsel

Please Note: All questions must be answered          Jay P. Lessler

Printed name of counsel

cc:   All counsel of record

Reset Fields

# TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS ............................................................. iii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................3

I.     BECAUSE CONSTRUCTION OF CLAIM 14 TURNS ON THE
INTRINSIC EVIDENCE, THIS COURT'S REVIEW IS *DE NOVO*............3

II.    A SKILLED ARTISAN WOULD READ CLAIM 14 TO COVER
ONLY A RACEMIC MIXTURE...................................................4

    A. Claim 14 Is Directed To What The Specification Identifies As
Compound 101, Not Compounds 102 Through 105. ...............4

    B. Plaintiffs Do Not Contest That Compound 101 Is A Racemic
Mixture. ..........................................................................14

    C. Consistent With The Claims And Specification, A Skilled Artisan
Would Expect A Depiction Like That In Claim 14 To Refer To A
Racemic Mixture. ............................................................14

III.   PLAINTIFFS ERRONEOUSLY RELY ON ARGUMENTS THE
DISTRICT COURT REJECTED. ..............................................17

    A. The District Court Correctly Refused To Rely On Defendants'
Alleged Admissions...........................................................17

    B. The District Court Correctly Concluded That This Court's Prior
Decisions Concerning Enantiomers Are Fact-Specific And
Distinguishable. ...............................................................18

CONCLUSION..................................................................................20

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
    616 F.3d 1283 (Fed. Cir. 2010) ......................................................................6, 7

*Aug. Tech. Corp. v. Camtek, Ltd.*,
    655 F.3d 1278 (Fed. Cir. 2011) ......................................................................5, 6

*Eidos Display, LLC v. AU Optronics Corp.*,
    779 F.3d 1360 (Fed. Cir. 2015) ...........................................................................3

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006) .........................................................................13

*Pacing Techs., LLC v. Garmin Int'l, Inc.*
    778 F.3d 1021 (Fed. Cir. 2015) ...........................................................................5

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
    457 F.3d 1284 (Fed. Cir. 2006) ...................................................................18, 19

*Pfizer Inc. v. Teva Pharm. USA, Inc.*,
    555 F. App'x 961 (Fed. Cir. 2014) ...............................................................18, 19

*Phillips Corp. v. AWH Corp.*,
    415 F.3d 1303,1314 (Fed. Cir. 2005) ................................................................18

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015) ............................................................................................3

**Other Authorities**

Manual of Patent Examining Procedure § 2755 .....................................................13

**TABLE OF ABBREVIATIONS**

| '372 patent | U.S. Patent No. 5,532,372 (Appx69-105) |
|---|---|
| D14 | The structure that appears in claim 14:<br> |
| Defendants | Defendants-Appellants Emcure Pharmaceuticals Limited, Heritage Pharma Labs Inc., fka Emcure Pharmaceuticals USA Inc., InvaGen Pharmaceuticals, Inc., Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries, Ltd. |
| Emcure | Defendants-Appellants Emcure Pharmaceuticals Limited, Heritage Pharma Labs Inc., fka Emcure Pharmaceuticals USA Inc. |
| InvaGen | Defendant-Appellant InvaGen Pharmaceuticals, Inc. |
| Opening Br. | Appellants' Opening Brief |
| Response Br. | Principal Brief of Plaintiffs-Appellees |
| POSA | Person of ordinary skill in the art |
| Plaintiffs | Plaintiffs-Appellees Sumitomo Dainippon Pharma Co., Ltd. and Sunovion Pharm., Inc. |
| PTE | Patent term extension |
| Teva | Defendants-Appellants Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd. |
| USPTO | United States Patent and Trademark Office |

# INTRODUCTION

The '372 patent's specification identifies a number of preferred embodiments, including Compounds 101 through 105. The patent has twenty different claims directed to various of the preferred embodiments. The claims range in scope from claim 1, which encompasses compounds depicted by a generic structural formula that covers potentially billions of compounds, to claims 14 through 19, which are directed to compounds having specific structural formulas.

This case involves the proper construction of a single asserted claim, claim 14, which covers a compound identified by a specific structural formula. The structural formula depicted in claim 14 is identical to what the specification identifies as Compound 101. And the specification makes clear, and Plaintiffs do not dispute, that Compound 101 is described as a racemic mixture—*i.e.*, an equal mixture of the enantiomer depicted in D14 and its mirror image. As the opening brief explained, the district court should have read the structural formula in claim 14 to have the same meaning as that described for the identical structure in the specification—*i.e.* a racemic mixture comprising the representative structural formula in claim 14 and its enantiomer. The district court's rejection of that straightforward reading was based on a host of errors in interpreting the intrinsic record.

Plaintiffs' attempts to defend the district court decision ignore the connection between claim 14 and Compound 101.  Instead, Plaintiffs rely on a series of statements, taken out of context, that suggest that the applicants understood that the *patent as a whole* was directed to more than just a racemic mixture.  Plaintiffs complain, for instance, that Defendants' construction of claim 14 would cover only one of many preferred embodiments identified in the specification, and point to places in the prosecution history where the applicants suggested that they intended the patent to claim compounds other than Compound 101.  Based on these statements, Plaintiffs argue that the district court correctly construed claim 14 to cover compounds beyond Compound 101.

This case, however, is not about what could be claimed *somewhere* in the patent—the question is only what is covered *by claim 14*.  Given the number of preferred embodiments highlighted in the specification, it is not surprising that one of the narrowest claims in the patent does not encompass every single preferred embodiment.  Instead, regardless of the scope of the patent's other, broader claims, the intrinsic record makes clear that *claim 14* was directed specifically to what the specification describes as the racemic *Compound 101*.  The fact that applicants dedicated one claim specifically to Compound 101 makes sense given that the applicants focused specifically on Compound 101 in the specification and in prosecution.

2

This Court should therefore reverse the district court, follow the clearest reading of claim 14 in light of the specification, and conclude that claim 14 should be construed to mean "a racemic mixture of two enantiomers of which the structural formula is representative."

## ARGUMENT

### I. BECAUSE CONSTRUCTION OF CLAIM 14 TURNS ON THE INTRINSIC EVIDENCE, THIS COURT'S REVIEW IS *DE NOVO*.

As Plaintiffs recognize (at 19), when claim construction is based on "evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history)," claim construction is a question of law that this Court reviews *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). Contrary to Plaintiffs' brief (at 19, 33), this case turns fundamentally on such intrinsic evidence. Claim 14 is directed to the structural formula D14, which is identical to the structural formula identified in the specification as Compound 101. Plaintiffs do not dispute that Compound 101 is described as a racemic mixture.

Though the intrinsic evidence is confirmed by extrinsic evidence, the Court need not address that extrinsic evidence in order to reverse. *See, e.g.*, *Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1634-65 (Fed. Cir. 2015) (reversing district court's claim construction based on *de novo* review of intrinsic record without considering district court's factual findings concerning extrinsic

3

evidence).  As the opening brief explained (at 25-26, 33-37), and as explained further below, pp. 14-16, *infra*, Defendants' proposed claim construction is confirmed by evidence that, consistent with Defendants' proposed construction of claim 14, organic chemists often depict one enantiomer as shorthand for a racemic mixture.  The opening brief explained (at 33-37) why the district court clearly erred in rejecting that evidence.  But this Court need not even decide whether the district court's analysis of this evidence was erroneous because this Court can reverse the district court solely based on its *de novo* review of the intrinsic record.

## II.   A SKILLED ARTISAN WOULD READ CLAIM 14 TO COVER ONLY A RACEMIC MIXTURE.

### A.   Claim 14 Is Directed To What The Specification Identifies As Compound 101, Not Compounds 102 Through 105.

Defendants' argument is that a skilled artisan would understand the three-dimensional structural formula in claim 14 to have the same meaning as it has in the specification, which identifies that formula as Compound 101.  The specification describes Compound 101 as a racemic mixture.  Plaintiffs' argument, by contrast, requires establishing that a skilled artisan would somehow understand the same three-dimensional structural formula identified in the specification as Compound 101 to be much broader in the context of claim 14, encompassing not just Compound 101, but at least Compounds 104, 105, and any combination of Compounds 104 and 105.  Plaintiffs' arguments for reading the same formula more

broadly in the claims than in the specification all fail.  Plaintiffs mainly emphasize their belief that the invention as a whole is far broader than Compound 101, and at least encompasses Compound 105.  But this case is not about the invention as a whole, it is about a specific, and very limited, claim.  Regardless of what the applicants intended to claim *somewhere* in the patent, Plaintiffs simply have no support for their argument that the structural formula identified in the specification as Compound 101, which is described as a racemic mixture, has a vastly expanded meaning in the context of claim 14.

1.    Contrary to Plaintiffs' brief (at 20-21), Defendants appropriately construe claim 14 to cover only one of the patents' many preferred embodiments.  Plaintiffs recognize (at 4-5, 20) that Compound 101 is *a* preferred embodiment of the patent.  Even if Plaintiffs are right that Compound 105 is *also* a preferred embodiment, it is irrelevant to the claim construction inquiry:  "[I]n a case such as this, where the patent describes multiple embodiments, every claim does not need to cover every embodiment."  *Pacing Techs., LLC v. Garmin Int'l, Inc*. 778 F.3d 1021, 1026 (Fed. Cir. 2015); *see also Aug. Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1285 (Fed. Cir. 2011) ("The mere fact that there is an alternative embodiment disclosed in the [asserted patent] that is not encompassed by [our] claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence" (internal quotation

marks omitted).).  Indeed, it would make no sense, in a patent with multiple claims and multiple preferred embodiments, to construe *every* claim to cover *every* preferred embodiment.  This is especially true where, as here, the applicants told the USPTO that multiple other claims encompass Compound 105.  Appx100-103; Appx476; *see also* Opening Br. 23; *Aug. Tech.*, 655 F.3d at 1285 ("[W]here, as here, other unasserted claims in the parent patent cover the excluded embodiments," it does not matter that a proposed construction of one claim excludes that embodiment).

Further, as the opening brief explained (at 21-22), and Plaintiffs do not dispute, the patent's characterization of the invention focused much more on Compound 101 than Compound 105.  *See also* pp. 10-12, *infra* (describing prosecution history's focus on Compound 101).  The fact that Plaintiffs are *now* concerned about Compound 105 because that happens to be the compound that Plaintiffs ultimately used in Latuda® does not change the fact that, at the time of patent prosecution, the applicants were particularly focused on Compound 101, *not* Compound 105.  Given the applicants' focus on Compound 101, it makes sense that the applicants would have directed a claim (ultimately claim 14) specifically to that compound.

Plaintiffs' reliance (at 20-21, 33-34) on *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) is misplaced.  In that

case, the proposed construction of the claim excluded *the only* preferred embodiment from the specification, and there was no suggestion that the patentees had identified any other claims as directed to that preferred embodiment. *See id.* In such a case, it makes sense to consider whether a proposed construction would cover the sole preferred embodiment. That is entirely different than this case, where the specification identifies multiple preferred embodiments, Defendants' proposed construction is directed to one of those preferred embodiments (indeed, one on which the patent shows a particular focus), and Plaintiffs have asserted that other claims are directed to the other preferred embodiments.

2. Plaintiffs, like the district court, rely heavily (at 4, 12, 16-17, 28, 30) on taking out of context the specification's statement that "[t]he imide compound (I) can have stereo and optical isomers, and this invention involves these isomers or their mixtures as well." Appx72 (4:51-53). The specification describes the "imide compound (I)" in column 3, and depicts it as:

$$Z-D-N\begin{array}{c} \diagup\phantom{xx}\diagdown \\ \\ \diagdown\phantom{xx}\diagup \end{array}G-Ar$$

Appx72 (3:3-9). Because Z, D, N, G, and Ar are all substitutable groups, the imide compound (I) represents a genus embracing more than one billion compounds. Appx72 (3:10-44); Appx1231-1234. For several reasons, the specification's

statement that the broad genus classified as imide compound (I) includes isomers and mixtures of isomers sheds no light on the scope of claim 14.

First, the statement on which Plaintiffs and the district court rely describes "*this invention*" as a whole as "involv[ing]" isomers and mixtures thereof.  Appx72 (4:52-53) (emphasis added).  The statement does not refer to any particular claim. For the same reason that not every claim among many needs to encompass every preferred embodiment among many, there is no reason to construe every claim, no matter how narrow the claim language itself, as covering every individual compound the specification identifies as being somehow "involve[d]" with the invention.

Second, and relatedly, claims other than claim 14 *are* directed more broadly to "imide compound (I)."  For example, as the opening brief explained (at 8, 30-31), claims 1, 6, and 11 are genus claims based specifically on what the specification identifies as "imide compound (I)."  Appx100-102 (60:36-61:6; 62:14-44; 63:3-30).  Those genus claims encompass billions of compounds, some of which are chiral, but some of which are achiral.  Appx1231-1234.  As a result of the large number of both chiral and achiral compounds in the genus, imide compound (I) is depicted, in the specification and in the claims, as a flat structure with no indication of stereochemistry.  Appx72 (3:3-44); Appx100-102.  In that context, it makes sense that that the specification would inform the skilled artisan

that the broad genus of imide compound (I) includes stereo and optical isomers and mixtures thereof, given that there would be no way to depict those isomers in the context of such a broad and diverse genus. By contrast, claims 14 through 19 are directed to much more specific imide compounds and *are* depicted with their three-dimensional stereochemistry. Appx102-103 (63:36-65:46). There is no reason why the specification's description of what the invention generally covers, in the context of discussing imide compound (I), would govern the meaning of more limited claims, directed to individual compounds that are individually described in the specification.

Third, as the opening brief explained (at 30-31), the logical implication of Plaintiffs' position conflicts with the specification. Plaintiffs' argument, like the district court's, is that, because of the specification's statement regarding imide compound (I), all claims in the patent must be interpreted to include "isomers or their mixtures." *See* Response Br. 19-20. But the specification makes clear that is wrong. When the specification discusses individual compounds, rather than a broad genus, it repeatedly identifies compounds that constitute only one particular isomer, including, as Plaintiffs recognize (*e.g.*, at 4-5), Compounds 102 through 105. According to Plaintiffs (and the district court), if a claim was directed specifically to Compound 102, the Court would be bound to construe that claim as encompassing not only Compound 102, but also its enantiomer (*i.e.,* Compound

103) and any mixtures thereof.  That would conflict with the specification's identification of these enantiomers as individual compounds.  A proper construction of claim 14 (or any of the patent's claims directed to specific compounds) should focus not on the specification's statement explaining the broad genus to which the invention relates at some high level, but on the language of each individual claim, read in light of the most relevant parts of the specification.

3.    Plaintiffs, like the district court, misconstrue the prosecution history. Plaintiffs rely entirely (at 7-8) on the applicants' response to the examiner's restriction or election requirement.  But, as the opening brief explained (at 31-32), none of the statements on which Plaintiffs (or the district court) rely are *limited to claim 14*, and they thus do not dictate the scope of that claim.  Plaintiffs also ignore other parts of the prosecution history that support Defendants' construction.

Plaintiffs erroneously rely on the applicants' responses to the patent examiner's restriction or election requirement for then-pending claims 11-29.  That set of claims includes not only claim 27, which ultimately issued as claim 14, but also other, much broader claims.  Appx960-962.  In response to the restriction or election requirement, applicants stated their "desire to elect a group which encompasses compound No. 101, namely Example 1 in the application," and to "elect a group which covers the desired compound No. 101."  Appx965.  Plaintiffs argue (at 7-8, 21) that the reference to "Example 1 in the application" shows that

the applicants intended to claim more than just Compound 101. But applicants' statements were not just about claim 14—they were about *all* of the then-pending claims, of which claim 14 was the *narrowest*. Even if the applicants intended to claim all of the compounds in Example 1 *somewhere* in the patent claims, it does not mean that they intended to include them in *claim 14*. Indeed, if anything, these statements support *Defendants'* proposed construction because they demonstrate the applicants' specific focus on Compound 101.

Further correspondence with the examiner, which Plaintiffs ignore, also undermines Plaintiffs' position. Plaintiffs rely on the applicants' first response, but the examiner *rejected* that response as non-responsive. Appx967-969. In the applicants' subsequent response, applicants dropped all reference to Example 1 and "elect[ed] as a species, if required, the compound described in the application as compound number 101." Appx970-971. Thus, to the extent the applicants identified any compound as being encompassed by all of the claims subject to the examiner's restriction, that compound was only Compound 101. The examiner accepted this more limited response, and examined then-pending claims 11-27. Appx972-975. Thus nothing in this correspondence suggests any understanding by applicants or the examiner that then-pending claim 27 itself covered a "genus" of compounds broader than Compound 101.

Plaintiffs also err in relying (at 6-7, 21) on the declaration by Yukihiro Ohno that applicants submitted to support the utility of the claimed invention. As Defendants noted in their opening brief (at 12-13), and as Plaintiffs recognize, that declaration *relied entirely on Compound 101* as a basis for establishing utility. Though, as Plaintiffs note, Dr. Ohno relied on tests regarding Compound 101 to establish the utility of *other* claimed compounds, Appx983, the fact that the applicants wanted to establish the utility of multiple compounds says nothing about the scope of *claim 14 in particular*. If anything, Dr. Ohno's declaration supports Defendants' construction by further emphasizing the importance the applicants placed in Compound 101, which explains why they would have dedicated an entire claim specifically to that compound.

Finally, Plaintiffs err in relying (at 21-22) on the patentees' statements in their request for a patent term extension and the USPTO's granting of that extension. The district court did not rely on these documents, and Plaintiffs do not cite a single claim-construction decision relying on documents related to a PTE request. Contrary to Plaintiffs' brief, those documents are not "intrinsic evidence" that form part of the "prosecution history" of the '372 patent. The '372 patent was granted in July 1996, Appx1307, Appx69, and Sunovion's PTE request was not filed until *more than fourteen years later*, Appx474. Sunovion's self-serving statement that claim 14 is broad enough to cover "lurasidone," made fourteen years

after the patent grant, could not have informed a skilled artisan as to the meaning of the patent claims, and sheds no light on that claim's actual scope.[1]  The statements are particularly irrelevant given they are self-serving statements, by the patentee, seeking to establish a *broader* construction of D14 than the specification discloses.  *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319 (Fed. Cir. 2006) ("Where, as here, the written description clearly identifies what his invention is, an expression by a patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight.").

The USPTO's decision to grant the PTE extension is equally irrelevant.  The USPTO generally accepts an applicant's representations in a PTE request at face value and does not make an independent evaluation of the truth or accuracy of the applicants' assertions.  *See* Manual of Patent Examining Procedure § 2755.  And the USPTO's decision to grant an extension says nothing about *claim 14 specifically,* given that Sunovion identified ten other claims that, according to Sunovion, also cover lurasidone.  Appx476.

---

[1] While Plaintiffs repeatedly use the term "lurasidone," this term appears *nowhere* in the intrinsic record.  The claim language, read in light of the specification and prosecution history, makes clear that claim 14 is directed to a compound identified by a specific structural formula that is identical to the formula the specification identifies as Compound 101—claim 14 is *not* directed to "lurasidone," let alone any mixture of lurasidone and its enantiomer.

13

**B.  Plaintiffs Do Not Contest That Compound 101 Is A Racemic Mixture.**

Plaintiffs do not dispute that Compound 101 is a racemic mixture: they do not dispute that the patent's description of the synthesis of Compound 101 shows that it is a racemic mixture, that the patent specifically describes dividing Compound 101 into its enantiomer components, or that the lack of optical activity data in Example 1-(a) would lead a skilled artisan to understand Compound 101 to be a racemic mixture.  *See* Opening Br. 23-25.  Thus, Plaintiffs effectively acknowledge that if the structural formula depicted in claim 14 has the same meaning as in the specification, the district court's claim construction was incorrect.

**C.  Consistent With The Claims And Specification, A Skilled Artisan Would Expect A Depiction Like That In Claim 14 To Refer To A Racemic Mixture.**

As the opening brief explained (at 25-26, 33-37), interpreting the structural formula in claim 14 to refer to a racemic mixture is not only the appropriate construction in light of the specification, it is consistent with the standard and customary practice among organic chemists to depict one enantiomer as shorthand for a racemic mixture.  The district court fundamentally misunderstood the evidence Defendants introduced concerning usage in the art.

1.  Plaintiffs do not respond *at all* to Defendants' explanation of why the district court's analysis of this evidence was erroneous.  Instead, Plaintiffs merely

14

summarize (at 24-25) the district court's flawed reasoning without even acknowledging Defendants' explanation of why the district court was wrong. Merely repeating the district court's analysis does not improve it.

2.     Instead of engaging substantively with Defendants' arguments, Plaintiffs cast aspersions on Defendants' expert, Dr. Baldwin, and misleadingly suggest that the district court based its decision on a credibility determination concerning expert witnesses. *E.g.*, Response Br. 29 (expressing "little wonder" why "in assessing the credibility of Dr. Baldwin's testimony in this case, the district court did not rely on Dr. Baldwin's opinions and extrinsic evidence"). But the district court never found Dr. Baldwin's written submission non-credible, nor did it find Plaintiffs' expert's written submission credible—neither expert's name even appears in the district court's decision. The district court's conclusion that, outside the context of the patent, a skilled artisan would not expect the depiction of one enantiomer to represent a racemic mixture was based entirely on its flawed analysis of the textbook evidence Defendants introduced. *See* Appx23-24.

3.     Plaintiffs make an additional argument, not adopted by the district court, that Defendants' evidence is "irrelevant" because it is "premised on purported situations where a chemist is trying to only depict either a particular enantiomer or a racemic mixture," whereas allegedly "[h]ere, the inventors selected the two-dimensional drawing in Claim 14 to represent a genus of chemical

15

compounds." Response Br. 25. But this argument is circular, as the entire question in this case is whether the structural formula in claim 14 *does* represent a "genus" of compounds, or whether it represents a specific racemic mixture, as it indisputably does in the specification.

Relatedly, Plaintiffs dispute (at 25) that the structural formula in claim 14, viewed literally, depicts one specific enantiomer. But Plaintiffs provide no explanation for what *else* the formula could be. D14 is clearly a three-dimensional characterization of a molecular structure, as it shows which atoms extend out of, or into, the page. *See* Opening Br. 4-9. And if the depicted compound is chiral, as this one is, a three-dimensional depiction must be a depiction of one specific enantiomer. Plaintiffs provide no argument to the contrary, simply stating (at 25) that Plaintiffs "maintain[] that the drawing depicted in Claim 14 *represents* 'lurasidone, lurasidone's enantiomer, as well as mixtures of these enantiomers'" (emphasis added). But regardless what D14 *represents*, it is, at least literally, the depiction of one enantiomer.

Defendants' evidence that organic chemists ordinarily depict a single enantiomer as shorthand for a racemic mixture is thus highly relevant. It confirms that the best reading of claim 14 is to read it, consistent with the specification, as claiming "a racemic mixture of two enantiomers of which the structural formula is representative."

## III.    PLAINTIFFS ERRONEOUSLY RELY ON ARGUMENTS THE DISTRICT COURT REJECTED.

Before the district court, Plaintiffs argued that the Defendants admitted that their construction was correct, and that this Court's prior precedents bar interpreting claim 14 as directed to a racemic mixture.  The district court rejected both arguments: it refused to rely on the alleged admissions as outside the intrinsic record, Appx28 n.8, and it recognized that this Court's prior decisions on which Plaintiffs rely have "many material differences from the instant case," Appx29. The district court correctly concluded that neither of these arguments supports Plaintiffs' construction.

### A.    The District Court Correctly Refused To Rely On Defendants' Alleged Admissions.

Plaintiffs argue (at 9-10, 22-23) that Defendants admitted—in either Paragraph IV notice letters or invalidity contentions—that claim 14 covers lurasidone.  The district court correctly refused to rely on these alleged admissions. As the district court recognized, Appx28 n.8, any such admission is not "intrinsic evidence" that would have motivated a skilled artisan in interpreting the patent. Plaintiffs do not identify *any* authority for the proposition that a party is bound by statements regarding its understanding of a claim, made in the early stages of litigation and never ruled or relied upon by any court, or even that such statements are relevant to claim construction.  The Court should evaluate the meaning of

claim 14 based on "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," *Phillips Corp. v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted), not based on statements made in documents exchanged between the parties, created more than 20 years after the filing date of the '372 patent, and not available to the public.

**B.    The District Court Correctly Concluded That This Court's Prior Decisions Concerning Enantiomers Are Fact-Specific And Distinguishable.**

Plaintiffs (at 26-28) argue that two of this Court's cases—*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284 (Fed. Cir. 2006) and *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 555 F. App'x 961 (Fed. Cir. 2014)—preclude construing a claimed chemical compound as limited to a racemic mixture.  The district court rejected this argument, concluding that those cases were based on facts specific to the patents at issue in those cases, and that there are "many material differences" between this case and this Court's prior decisions.  Appx29.  The district court correctly found those cases distinguishable.

In *Pfizer v. Ranbaxy*, this Court rejected Ranbaxy's argument that a claimed chemical compound with four isomers (two cis-isomers and two trans-isomers) should be limited to a racemic mixture.  The Court relied on explicit statements in the specification that limited the invention to the trans-form of the compound, but

18

did not further limit the claim to trans-racemates.  457 F.3d at 1289-90.  In

addition, this Court declined to restrict the claimed compound to a racemic mixture

on the basis of examples describing racemates because of another explicit

statement in the specification indicating that the examples were not intended to

limit the scope of the invention as claimed.  *Id.* at 1290.  There are no such

statements in the specification of the '372 patent, and therefore Plaintiffs' reliance

on *Pfizer v. Ranbaxy* is unavailing.

     In *Pfizer v. Teva*, this Court held that patentees' use of the prefix (R,S) in the

specification to identify a racemic mixture showed that a claim that *lacked* that

prefix was not limited to a racemic mixture.  555 F. App'x at 965-66.  If anything,

that conclusion supports *Defendants'* proposed construction.  While in *Pfizer v.*

*Teva* this Court rejected defendants' attempt to interpret claim language to have a

different meaning than in the specification, here it is *Plaintiffs* who seek to

construe D14 as having a different meaning in claim 14 than it has in the

specification.  As Plaintiffs note (at 28), the Court in *Pfizer v. Teva* also held that a

table in the specification with data concerning only the racemate could not

overcome the disconnect between the specification and defendants' proposed

construction.  555 F. App'x at 965-66.  But that conclusion is irrelevant here given

that Defendants have relied on data tables concerning Compound 101 not to

*overcome* a disconnect between the specification and Defendants' proposed

construction of claim 14, but to further support a claim construction that is based primarily on the fact that claim 14 depicts a chemical structure that the specification identifies *as a racemate*.

## CONCLUSION

The judgment of the district court on claim construction should be reversed.

Respectfully submitted,

*/s/ Ira J. Levy*
Ira J. Levy
Cynthia Lambert Hardman
Brian Prew
Linnea P. Cipriano
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY  10018
(212) 813-8800

William M. Jay
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC  20001
(202) 346-4000

David J. Zimmer
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
(617) 570-1192

*Counsel for Defendants-Appellants Teva*

*Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd.*

*/s/ David C. Kistler*
David C. Kistler
BLANK ROME LLP
New Jersey Resident Partner
301 Carnegie Center, 3rd Floor
Princeton, New Jersey 08540

Jay P. Lessler
Christopher K. Hu
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208

*Counsel for Defendants-Appellants*
*Emcure Pharmaceuticals, Ltd. and*
*Heritage Pharma Labs Inc.*
*(formerly known as Emcure*
*Pharmaceuticals USA, Inc.)*

*/s/ Salvatore Guerriero*
Robert S. Silver
Salvatore Guerriero
Pei-Ru Wey
CAESAR RIVISE, PC
1635 Market Street
12th Floor – Seven Penn Center
Philadelphia, PA 19103
(215) 567-2010

*Counsel for Defendant-Appellant*
*InvaGen Pharmaceuticals, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE SYTLE REQUIREMENTS</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 4,414 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2010.


July 24, 2017                               */s/ Ira J. Levy*
                                            Ira J. Levy
                                            GOODWIN PROCTER LLP
                                            620 Eighth Avenue
                                            New York, NY  10018
                                            (212) 813-8800

                                            *Counsel for Defendants-Appellants Teva
                                                Pharmaceuticals USA, Inc. and Teva
                                                Pharmaceutical Industries Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2017, I electronically filed the foregoing APPELLANTS' REPLY BRIEF with the United States Court of Appeals for the Federal Circuit by using the CM/ECF system.  I certify that all counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

July 24, 2017

*/s/ Ira J. Levy*
Ira J. Levy
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY  10018
(212) 813-8800

*Counsel for Defendants-Appellants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd.*